IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT JOHN ROBYN,                             No. CIV S-11-0538-CMK

        Plaintiff,

   vs.                                                          ORDER

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 19) and defendant's cross-motion for summary judgment (Doc. 20). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

## I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on April 12, 2006, alleging an onset of disability on January 1, 1999, due to disabilities including ulcerative colitis, degenerative disc disease, vision problems, stomach pain, GI bleeding, migraines, and numbness in front left leg. (Certified administrative record ("CAR") 22, 41-44, 55-59, 86-92, 128-34). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on September 17, 2008, before Administrative Law Judge ("ALJ") Theodore T. N. Slocum. In a January 14, 2009, decision, the ALJ concluded that plaintiff is not disabled[2] based

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

on the following findings:

    1.    The claimant has not engaged in substantial gainful activity since April 12, 2006, the application date (20 CFR 416.971 *et seq.*).

    2.    The claimant has the following severe impairments: chronic colitis and degenerative disc disease (20 CFR 416.921 *et seq.*).

    3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

    4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can occasionally stoop, crouch, and crawl, and climb ladders, ropes, and scaffolds. He can frequently climb stairs and ramps, and perform activities such as balancing and kneeling. The claimant can not perform work that requires constant or abrupt movements of the neck. Given the claimant's gastrointestinal impairment, he must perform work within two minutes of a bathroom.

    5.    The claimant has no past relevant work (20 CFR 416.965).

    6.    The claimant was born on December 1, 1964 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

    7.    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

    8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

    9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

    10.    The claimant has not been under a disability, as defined in the Social Security Act, since April 12, 2006, the date the application was filed (20 CFR 416.920(g)).

(CAR 14-21). After the Appeals Council declined review on January 18, 2011, this appeal

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred in three[3] ways:  (1) the ALJ failed to properly evaluate the medical evidence; (2) the ALJ improperly discredited plaintiff's testimony regarding his subjective complaints; and (3) the ALJ failed to properly question the vocational

---

[3] Any other errors plaintiff identified were not developed, or were too inarticulate for the court to determine.

4

expert.

### A.     MEDICAL EVIDENCE

Plaintiff's first claim is unclear to the court.  He argues the ALJ erred in his evaluation of the medical evidence, specifically the evidence supporting his weight loss.  It appears he is attempting to make the argument that the ALJ erred at step three of the analysis in finding that plaintiff did not meet the listing requirements for finding disability.  The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

Here, plaintiff argues that his weight loss was significant, and the ALJ's finding that the amount of weight he lost was not significant, was erroneous.  He argues that due to his Crohns disease, he lost as much as seventeen pounds, which was approximately 9.5% of his weight, during a one month period.  However, plaintiff's point eludes the court.  The ALJ found plaintiff's chronic colitis is a severe impairment, but not severe enough to meet the listing impairment requirements.  The finding plaintiff objects to is the ALJ's determination that he has not lost a significant amount of weight since he filed his application, noting his weight generally remained in the 168 to 178 pound range.  A review of the medical records reveals that plaintiff's weight in fact varied from a high of 180 in March 2007, to a low of 162 in July 2007.  (CAR 177, 252).  However, it is also clear from the record his weight varied during much of 2007, while he was incarcerated, generally going down, but also bouncing back up.  Specifically in July 2007, he was down to 162, but by August he had regained five pounds to 168.  Then by December 2007, he was up to 171 pounds, but back down to 164 pounds by April 2008.  Even if the amount of weight plaintiff lost is considered significant, that alone is insufficient to meet the

listing requirements, assuming that is the argument plaintiff intended to make. He argues the amount lost was 9.5% of his weight; but the listing requirement is 10% within a six month period. See 20 CFR Part 404, Subpart P, Appendix 1, Listing of Impairments 5.06. Listing of Impairment 5.06, inflammatory bowel disease, requires, *inter alia*, "Involuntary weight loss of at least 10 percent from baseline . . . present on at least two evaluations at least 60 days apart." Plaintiff does not argue he meets that requirement, much less the other listing requirements of a finding of disabled at step three. Therefore, the undersigned cannot find a reversible error in the ALJ's treatment of plaintiff's weight loss.

### B. PLAINTIFF'S CREDIBILITY

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the

medically determinable impairment and the symptom. By requiring that

> the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, plaintiff is challenging the ALJ finding that plaintiff testimony regarding the frequency of his bathroom use was not credible, and that plaintiff was not compliant with his treatment. The ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.
> . . .

> [A]lthough the record clearly shows that the claimant experiences symptoms related to colitis, the record suggests that any exacerbations that the claimant experiences are episodic in nature. Moreover, the record contains multiple references that show that the claimant is not always compliant with his medicinal or treatment regime (Exhibit 405F).
>
> In addition, despite the claimant's allegation of persistent diarrhea, the record shows that his weight has generally remained stable during the past three years. Moreover, no physician has suggested that the claimant cannot perform the demands of work activity and the physician who conducted the only comprehensive examination of record noted that the claimant is capable of light work.
>
> The record also reflects that the claimant has reported that his symptoms are well controlled with medication, and any exacerbations that he may experience are controlled with an adjustment in medication.

(CAR 18-19).

Plaintiff argues that the ALJ's finding that his symptoms are episodic is not supported by the record, especially in light of his several hospitalizations. The undersigned does not agree. It is clear from the record that while plaintiff was incarcerated, he had difficulty obtaining proper treatment. This led to the necessary hospitalizations. However, as noted by the ALJ, when plaintiff did receive proper treatment for his condition, his symptoms were manageable. This finding is supported by the records from the Sacramento County Department of Heath and Human Services. Specifically, in December 2007, plaintiff reported his Crohn's was well controlled with his current medication. (CAR 174). In addition, contrary to his statements that he had 12-25 bowl movements per day, in April 2008, he reported only 5-6 per day. (CAR 171). Plaintiff also testified that he may have to go to the bathroom anywhere from one to 25 times, but on average it ranges from three to 12 times a day. (CAR 593). The ALJ's credibility determination is further supported by plaintiff's failure to follow through with his treatment. Specifically, a progress report in June 2008 notes that he had missed several recent follow-up visits with his doctor. As a result, his prescription refill request was denied until he had been seen. (CAR 170). While the undersigned agrees, as does the defendant, that some of plaintiff's lack of compliance with treatment was caused by the prison not plaintiff himself, there

is sufficient support for the ALJ's other reasons.  In addition, the ALJ's finding of lack of compliance, even if caused by the prison, provides further support for the ALJ's finding that with proper treatment, plaintiff's symptoms are controlled.  Thus, the ALJ's credibility determination is supported by the record.

The undersigned agrees that the ALJ provided sufficient reasons for discounting plaintiff's testimony regarding the frequency of his bathroom use.  Specifically, that plaintiff's symptoms are sufficiently controlled with proper treatment, and the exacerbation of his conditions to the extent he testified to occurs when he fails to follow the prescribed treatment. In addition, the ALJ did not completely discount plaintiff's testimony, providing for a need to be in close proximity to a bathroom in his residual functional capacity (RFC) assessment.  As stated above, the court defers to the Commissioner's discretion if proper reasons are provided.  Given the proper deference, the court finds no error in the ALJ's credibility determination.

### C. VOCATIONAL EXPERT

The ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate

1  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

2  determination must be supported by substantial evidence in the record as a whole.  See Embrey

3  v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

4          Plaintiff argues the hypothetical posed to the vocational expert (VE) was

5  inadequate because it did not sufficiently address plaintiff's need for frequent bathroom breaks.

6  In addition, he argues the ALJ erred in ignoring the hypothetical posed by plaintiff's attorney

7  which included his need for as many as 12-25 bowel movements per day.

8          The hypothetical the ALJ asked of the VE included the limitations the ALJ

9  determined were supported by the evidence, and which were included in the RFC.  The

10 hypothetical posed is as follows:

> Assume such a person has the residual functional capacity to perform exertional work as follows:  he can lift ten pounds frequently, twenty pounds occasionally, can stand or walk about six hours in an eight-hour day, can sit about six hours in an eight-hour day, his ability to push and pull is unlimited except as designated by his capacity for lifting and carrying.  Posturally the hypothetical person can do the following frequently: climb ramps and stairs, balance, and kneel.  The hypothetical person is limited to no more than occasional participation in the following activities: work on ladders, ropes and scaffolds, stooping, crouching and crawling.  Manipulatively the only limitation is - - overhead reaching with the left upper extremity is limited to frequent.  He can do it frequently and there are to be no constant or abrupt movements of his neck.  That's the State Agency's hypothetical.  I would - - also allow you to assume that the hypothetical person should probably be near a bathroom that he can get to within, say, two minutes.

20 (CAR 598-99).  Based on that hypothetical, the VE testified to three job categories such a person

21 could be expected to perform, including retail sales person, bill or account collector, and dining

22 room attendant.  (CAR 599-600).

23         As discussed above, the ALJ did not err in his determination that while plaintiff

24 required a position in close proximity to a bathroom, there was no specific number of bathroom

25 breaks plaintiff required.  Thus, the hypothetical posed to the VE adequately reflected plaintiff's

26 limitations, and the ALJ was not required to include a limitation for such frequent bathroom

breaks. Nor did the ALJ err in not including a limitation relating to the possibility of future hospitalizations. There was no finding that such future hospitalizations are likely to occur, nor has plaintiff made such a showing. While there is a history of hospitalizations when plaintiff is unsuccessful in following the proper treatment, the ALJ determined that plaintiff's symptoms are adequately controlled with proper treatment, and therefore there would be no grounds for finding frequent hospitalization would be likely. There is no evidence to show that such a determination was erroneous.

The ALJ included all the functional limitations he determined plaintiff has in the hypothetical posed to the VE. It was unnecessary for the ALJ to include in his hypothetical, or accept a hypothetical which included limitations he determined were not supported by the record. The undersigned finds no error in the hypothetical the ALJ utilized to determine whether there are jobs plaintiff is capable of performing.

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 19) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 26, 2012

                                          **CRAIG M. KELLISON**
                                          UNITED STATES MAGISTRATE JUDGE